IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:21cr42 |
| ) | |
| KEITH RODNEY MOORE, ) | |
| Defendant ) | |

### MR. MOORE'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

Keith Moore, through counsel, moves the Court to suppress evidence of a handgun that police found after initiating an unconstitutional traffic stop of Mr. Moore in this case and to suppress statements after interrogating Mr. Moore in violation of his Fifth Amendment right to remain silent.

### FACTS

On Saturday night, December 5, 2020, Mr. Moore was at a gas station at Brookland Park Boulevard and Third Avenue in the East Highland Park neighborhood of Richmond, Virginia. According to the University of Virginia's "Racial Dot Map" that plotted 2010 census data, the entire neighborhood of that section of East Highland Park is almost exclusively black residents:



That same night, members of the Richmond Police Department had been stopping and ticketing other black residents in and visitors to the neighborhood around Brookland Park Boulevard and Third Avenue.  Many of these traffic stops were for only minor traffic infractions.  In a recorded body camera video, two members of the Richmond Police Department who transported Mr. Moore to the local jail discussed looking for traffic infractions that night in hopes that the traffic stops turned into drug investigations.

As Mr. Moore left the gas station that night, he got into the car that he had bought last year from a local car dealership.  The car had the same temporary license plate that the car dealership staff had put on the car when Mr. Moore bought it.  After Mr. Moore got into the car, he turned right out of the gas station parking lot.  A police car immediately pulled right behind him and turned on its emergency lights to initiate a traffic stop.  At that point, Mr. Moore had not committed any traffic infraction and was not reasonably suspected of committing any crime.  Police reports and the body worn camera videos indicate that the police had initiated a traffic stop of Mr. Moore because they thought his temporary tag was phony.

The police reported pulling over two other individuals before Mr. Moore with the same temporary tag number on December 5, 2020.  When the police officers ran the tag number, at least one of the other temporary tags properly identified the car's VIN number on the temporary tag.  The police let that individual go because she had committed no crime.  The temporary tag on Mr. Moore's car also properly identified the car and the car's VIN number.  When the police ran the information, the information properly returned back to Mr. Moore's car.  Not too long before the traffic stop in this case, Mr. Moore was stopped for speeding while driving this same car with the same temporary tag in Hanover County.  The police in Hanover County ran the information for Mr. Moore's car through the database and found no problem with the temporary tag.

After police initiated the traffic stop, Mr. Moore did not immediately pull over, but hit his car on a curb. He then ran from the police before they caught up to him. Mr. Moore stopped running and the police took Mr. Moore forcefully to the ground. The police found a handgun and ammunition in Mr. Moore's car underneath the driver's seat. They handcuffed him, arrested him, and put him in the back of a police car. After taking Mr. Moore into custody, police officers clearly questioned Mr. Moore and solicited statements from him before ever reading him his *Miranda* rights. After soliciting these statements, another police officer then read Mr. Moore his *Miranda* rights. Mr. Moore then invoked his right to remain silent. Mere minutes later, that same officer and other officers began re-interrogating Mr. Moore again at the scene and on the way to the local jail. Mr. Moore then made further incriminating statements.

After being arrested, Mr. Moore ultimately obtained a bond in state court and obtained two jobs while on bond. The federal government indicted Mr. Moore on May 4, 2021, alleging that he was a felon in possession of the handgun on December 5, 2020. ATF officers arrested Mr. Moore on a warrant for the federal indictment on May 28, 2021, when Mr. Moore was at his daytime job. This Court released Mr. Moore, and he remains on release. He now moves to suppress all fruits of the poisonous tree flowing from the illegal traffic stop, including the handgun.

## ARGUMENT

### I. The police violated Mr. Moore's Fourth Amendment right to remain free of unreasonable seizures when they pulled Mr. Moore over to investigate a temporary dealer tag.

The Fourth Amendment protects the right of people to be secure in their persons against unreasonable searches and seizures. U.S. Const. amend. IV. A police officer may "initiate a brief investigative traffic stop when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020)

(quoting *United States v. Cortez*, 449 U.S. 411, 417–418 (1981)). The "reasonable suspicion" needed to justify a traffic stop "is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990). Inchoate suspicion or a hunch that an individual is engaging in criminal activity is not sufficient to justify a traffic stop. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). "The Government bears the burden of proving that reasonable suspicion justified a warrantless seizure." *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018).

Simply having temporary tags on a car is not a reasonable basis for a traffic stop. *See United States v. Wilson*, 205 F.3d 720, 724 (4th Cir. 2000) ("Upholding a stop on these facts would permit the police to make a random, suspicionless stop of any car with a temporary tag. The Fourth Amendment does not afford the police such unbridled discretion."). While it is a crime in Virginia to display a license tag one knows to be fictitious, *see* Va. Code § 46.2-612(b)(1), the police should have known that if any person was responsible for issuing a fictitious tag, it was the car dealership staff member, not Mr. Moore. The police allege that they had already pulled over two other cars that same night with the same temporary tag number. The temporary tag for least one of those other cars[1] properly displayed the car's VIN number and listed the name of the dealership. The police determined that the driver had thus not committed any crime and let her go. Yet, that same night, they initiated a traffic stop of Mr. Moore based only on a hunch and through no fault of Mr. Moore's at all. Thus, this Court must suppress all evidence that the police obtained after initiating the traffic stop in violation of Mr. Moore's right to remain free from unreasonable seizures.

---

[1] Undersigned counsel has requested discovery for these other two purported stops on December 5, 2020, but has not yet received that discovery from the government.

**II.     The police violated Mr. Moore's Fifth Amendment right to remain silent by interrogating him both before and after *Miranda* warnings and after he invoked his right to remain silent.**

*Miranda* warnings are required when a defendant is in custody. *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984) ("[I]f the police take a suspect into custody and then ask him questions without informing him of the rights enumerated above, his responses cannot be introduced into evidence to establish his guilt."). Whether a person is in custody for *Miranda* purposes "is an objective inquiry, and essentially asks "whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017). Here, after the police chased Mr. Moore, tackled him, arrested him, and put him in handcuffs in the back of a police car. The police told him repeatedly that he was under arrest. No reasonable person would have felt that he was free to leave at that point. Mr. Moore's pre-*Miranda* statements must be suppressed because all statements "made during a custodial interrogation will be suppressed unless police advise the defendant of his rights under *Miranda*[.]" *Giddins*, 858 F.3d at 879.

After interrogating Mr. Moore in handcuffs for quite some time while he was surrounded by armed police officers, a female police officer on scene finally gave Mr. Moore the required *Miranda* advisements. Before making any further statements and shortly after the advisements, Mr. Moore invoked his right not to speak with the officers. Therefore, the interrogation that followed and resulted in Mr. Moore confirming and then expanding on his prior un-*Mirandized* statements does not and cannot overcome the prior invocation. *See, e.g., Edwards v. Arizona*, 451 U.S. 477, 484 (1981) ("additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded

to further police-initiated custodial interrogation even if he has been advised of his rights"); *see also Missouri v. Seibert*, 542 U.S. 600 (2004) (condemning the deliberate avoidance of *Miranda* through a two-step interrogation: first interrogating a suspect without warnings, then administering the warnings and re-asking the same questions). Here, the police interrogated Mr. Moore for several minutes before a female police officer administered *Miranda* warnings. After administering the warnings, the officers used Mr. Moore's responses from the previous interrogation to re-elicit the same information.

Such a procedure results in suppression if it was implemented deliberately. *See United States v. Mashburn*, 406 F.3d 303, 308-09 (4th Cir. 2005) (acknowledging Justice Kennedy's concurrence and deliberate-avoidance test as the controlling opinion in *Seibert*). In determining whether the procedure was deliberate and whether "midstream" *Miranda* warnings were effective, the Court should consider "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Seibert*, 542 U.S at 615 (Kennedy, J. concurring). The test appears to be an objective one. *Id.* ("by any objective measure…").

Here, all of the factors weigh in favor of suppression. First, the officers asked detailed questions during the first interrogation about what they found in the car and about why Mr. Moore ran from the police. Second, the contents of the two interrogations overlapped nearly completely. Next, the timing of the first and second interrogations was in almost immediate succession. Mr. Moore was interrogated for several minutes before the *Miranda* warnings were given. Then the police began the second round of questioning almost immediately after the warnings and continued as the officers were transporting Mr. Moore to jail. Lastly, the same officers conducted significant

portions of both interrogations in the span of about thirty minutes. Therefore, "by any objective measure," the two-step interrogation in this case violated *Seibert* and the statements must be suppressed.

## CONCLUSION

As explained above, the Court must suppress evidence of a handgun that police found after initiating an unconstitutional traffic stop of Mr. Moore and suppress statements the police obtained after interrogating Mr. Moore in violation of his Fifth Amendment right to remain silent.

<div style="margin-left: 50%;">
Respectfully submitted,<br>
KEITH RODNEY MOORE
</div>

By: _____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org