IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:21cr42 |
| | ) | |
| KEITH RODNEY MOORE, | ) | |
| Defendant | ) | |

**MR. MOORE'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

Keith Moore, through counsel, replies as follows to the government's response to his motion to suppress evidence of a handgun that police found after initiating an unconstitutional traffic stop of Mr. Moore in this case and to suppress statements after interrogating Mr. Moore in violation of his Fifth Amendment right to remain silent[1]:

**I.     The police violated Mr. Moore's Fourth Amendment right to remain free of unreasonable seizures when they pulled Mr. Moore over to investigate a temporary dealer tag.**

The government's primary argument on the Fourth Amendment violation in this case is that the police ultimately did not seize Mr. Moore until other events occurred after the police initiated a(n improper) traffic stop. *See* ECF No. 22 at 6-7. The government argues that it should not matter whether the police had a proper basis to initiate the traffic stop unless the individual immediately pulled over in response to the police officers' show of authority. But, that is not the law of traffic investigations. Traffic stop investigations are akin to *Terry* stops, and just like a *Terry* stop, must be just from the inception. *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968) ("And in determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—

---

[1] The government's contentions regarding the Fifth Amendment violations in this case appear to be factual in nature and will be addressed at the evidentiary hearing in this case scheduled for July 26, 2021.

1

whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."); *United States v. Bernard*, 927 F.3d 799, 805 (4th Cir. 2019) (observing that a seizure is justified from its inception "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation.").

In this case, Mr. Moore was undoubtedly seized when several police officers chased him, drew guns at him, and forcefully pulled him to the ground and put him in handcuffs. The question in this case is not then whether Mr. Moore was seized, but rather whether the events between when the police officers initiated the traffic stop and when they ultimately seized Mr. Moore negate the illegality at the inception. The answer to this question must be no. *See, e.g.*, *Wingate v. Fulford*, 987 F.3d 299, 310 (4th Cir. 2021) (finding that *Terry* stop not justified at inception did not develop into legal seizure after citizen fled from police officer). Were that not the case, there would be no reason for over half a century of caselaw to hold that a seizure must be justified based on the circumstances at the beginning of the police intrusion into a person's privacy. *See Terry*, 392 U.S. at 19-20; *see also United States v. Fambo*, 2006 WL 2990461, at *18 (W.D.N.Y. Oct. 19, 2006) ("In essence, the officers were utilizing this alleged traffic stop with either a hope or suspicion that the defendant may subsequently do something that violates the law.") (internal quotation marks omitted).

Here, all Mr. Moore did was walk out of a gas station convenience store and get into his car in a part of town made up of almost exclusively black residents and turn out of the gas station parking lot. At that point, several police cars got right behind his car and immediately turned on the cars' emergency lights, ordering Mr. Moore to pull over. Mr. Moore, who was simply driving as a black man in a black neighborhood, was very concerned and did not pull over immediately.

He ultimately put the car in park on a curb and ran until police officers pointed guns straight at him grabbing his clothes and pulling him to the ground. An illegal stop cannot be made legal by incriminating behavior that comes after the suspect is stopped. *See, e.g.*, *Florida v. J.L.*, 529 U.S. 266, 271 (2000). And if subsequent incriminating events cannot justify an unreasonable stop, then it logically follows that subsequent incriminating events should not be able to justify an unreasonable order to stop. Unreasonable stops and unreasonable orders to stop are both abuses of police power, and there is no principled basis for prohibiting the former but not the latter.

The government next argues that in any event, the seizure was justified from the inception because of the allegedly fake temporary tag. As the government described, but still has not provided discovery regarding despite a written request, the police officers reported having encountered that same license plate number that same night. The second incident revealed that the plate properly identified the VIN number of the car and the VIN number matched the car's description with the Department of Motor Vehicles. Having determined that the second individual had committed no crime, the police officers let her go. Not a single case in Virginia cites Va. Code § 46.2-612(b)(1), which criminalizes the knowing display of fictitious license plates, the statute clearly requires proof that the individual knew the tag was fake. Unlike handwritten temporary tags or obviously fake tags, there was nothing about this particular tag that indicated to anyone that Mr. Moore was knowingly displaying a fake temporary tag. *See United States v. Wilson*, 205 F.3d 720, 724 (4th Cir. 2000) ("Upholding a stop on these facts would permit the police to make a random, suspicionless stop of any car with a temporary tag. The Fourth Amendment does not afford the police such unbridled discretion."); *see also Wingate*, 987 F.3d at 305 ("We have often emphasized that the Fourth Amendment requires particularity—a *particularized* and objective

basis for suspecting *the particular person* stopped of criminal activity.") (internal quotation marks omitted). Contrary to the government's argument, this encounter was illegal from its inception.

The government's final argument is that Mr. Moore abandoned his car and its contents when he parked it and ran. Whether an individual abandoned property is primarily a question of the person's intent at the time of the alleged abandonment. *See United States v. Colbert*, 474 F.2d 174, 176-77 (5th Cir. 1973) (finding that two individuals who had disclaimed all interest in briefcases before police searched them and where officers "in no way compelled these actions" had abandoned interest in briefcases.). "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *Id.* at 176. If there is a nexus between the alleged abandoned property and illegal police conduct, the evidence must be suppressed. *See United States v. Maryland*, 479 F.2d 566, 568 (5th Cir. 1973) ("If there is a 'nexus between . . . lawless police conduct and the discovery of the challenged evidence' which has not 'become so attenuated as to dissipate the taint,' then the evidence should be suppressed. The nexus between the arrest and the discovery of the evidence is strong in this case, for the arrest obviously motivated appellant to attempt to conceal the bills in the police vehicle.") (internal citation omitted); *see also United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995) ("An abandonment must be voluntary, and an abandonment that results from a Fourth Amendment violation cannot be voluntary. Consequently, even if the district court correctly concluded that defendant abandoned the bag at the security office, we must determine whether that abandonment was the result of an earlier Fourth Amendment violation.").

Here, Mr. Moore left his car and its contents parked by the side of the road. He was gone from the car for a matter of minutes. When police officers brought Mr. Moore back to the area of his car (and the numerous police cars surrounding it), he clearly indicated that it was his car and demonstrated his intent to retain his interest in that property. Unlike the bag of drugs at issue in *California v. Hodari D.*, 499 U.S. 621 (1991), one cannot simply fling aside a hunk of plastic and metal weighing thousands of pounds. One does not abandon a car and its contents by walking, or running, away from it briefly. Thus, this Court must suppress all evidence that the police obtained after initiating the traffic stop in violation of Mr. Moore's right to remain free from unreasonable seizures.

## CONCLUSION

As explained above and in his motion to suppress, *see* ECF No. 17, the Court must suppress evidence of a handgun that police found after initiating an unconstitutional traffic stop of Mr. Moore and suppress statements the police obtained after interrogating Mr. Moore in violation of his Fifth Amendment right to remain silent.

Respectfully submitted,
KEITH RODNEY MOORE

By: _____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org