

RICHMOND POLICE DEPARTMENT
GENERAL ORDER

| Subject: **CONSTITUTIONAL RIGHTS** | | Chapter 1 | Number 2 | Pages 10 |
|---|---|---|---|---|
| References: CALEA Standards: 1.2.3 | Related Orders: General Order 1-6, 6-26, 7-18 | Effective Date: **02/11/2019** Revised By: **Review** Prv. Rev. Date: 09/02/15 | | |
| Chief of Police: William C. Smith | | | | |

I. PURPOSE

The purpose of this directive is to define the authority of officers to arrest with and without a warrant, establish the policy and procedure for receiving admissions and confessions, establish the policy and procedures for safeguarding the constitutional civil rights of each person having contact with the Department without regard to race, creed, national origin, gender, sexual orientation**,** age or economic status, and to help officers determine when field interviews are necessary and useful and establish procedures for conducting them safely.

II. ***SUMMARY OF CHANGE***

***There are no revisions for this publication at this time.***

III. POLICY

All citizens of this country, under the Constitution, are guaranteed certain basic rights. It is the policy of the Richmond Police Department to safeguard these rights without bias, and to follow all laws and Department policies, procedures and regulations to ensure that these safeguards shall not be denied any citizen. It is also the policy of the Department to ensure the preservation of evidence and protect constitutional rights of arrestees. All Sworn Department Employees shall familiarize themselves with the laws, Department policies, procedures, and regulations pertaining to civil rights.

Short of the application of force, an arrest is the most serious action an officer can undertake. The most important legal question facing an officer at the moment of arrest is the existence of probable cause; without probable cause, the arrest is illegal and the evidence of criminality that was obtained because of the illegal arrest is inadmissible. Officers shall, accordingly, exercise critical judgment in making arrests. Critical judgment includes consideration for bystanders, the time, place and location of offenses and the use of force in making the arrests. Officers shall consider alternatives to arrest consistent with the law enforcement mission.

The Department expects and encourages officers to conduct field interviews. Field interviews are important contacts with citizens that aid in preventing and investigating crime. Technically, a field interview is a lawful stop of a citizen for investigative purposes. Officers shall document stops for the purposes of identifying suspects, witnesses or victims for crime prevention, intelligence gathering and community relations. The Department expects officers

to gather such information with proper observance of constitutional safeguards. Field interviews frequently contribute to establishing the reasonable suspicion or probable cause to arrest or conduct a search. ***[CALEA 1.2.3]***

III. ACCOUNTABILITY STATEMENT

All employees are expected to fully comply with the guidelines and timelines set forth in this general order. Failure to comply will result in appropriate corrective action. Responsibility rests with the Division Commander to ensure that any violations of policy are investigated and appropriate training, counseling and/or disciplinary action is initiated.

This directive is for internal use only, and does not enlarge an employee's civil liability in any way. It should not be construed as the creation of a higher standard of safety or care in an evidentiary sense, with respect to third party claims. Violation of this directive, if proven, can only form the basis of a complaint by this department, and then only in a non-judicial administrative setting**.**

IV. DEFINITIONS

A. ARREST – An arrest is a seizure of a person. An arrest must be supported by probable cause. Generally, according to Fourth Amendment cases, the test of whether an arrest has taken place is whether a reasonable person under the circumstances would have felt free to leave.

B. FIELD INTERVIEW – A consensual encounter with a person to determine that person's identity and to resolve the suspicions about possible criminal activity. A field interview resolves an ambiguous situation. A field interview contrasts with a stop which is based on reasonable suspicion of criminal behavior. Field interviews require voluntary cooperation of citizens.

C. ONESOLUTION – The Records Management System (RMS) used by the Department.

D. PROBABLE CAUSE – According to the U.S. Supreme Court: Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which the arresting officer had reasonable trustworthy information of, are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed by the suspect.

E. REASONABLE SUSPICION – Articulable facts which lead an experienced officer to reasonably suspect that a crime has been or is about to be committed. A well-founded suspicion based on the totality of circumstances and does not exist unless it can be articulated.

F. STOP – The detention of a subject for a brief period. To make a stop, the officer must have reasonable suspicion to believe that criminal activity is afoot and that the person to be stopped is involved. A stop is an investigative detention. The following characteristics may, under the circumstances, give rise to reasonable suspicion for the stop:

1. A person fits the description on a wanted notice;

2. A person has exhibited furtive conduct such as fleeing from the presence of an officer or attempting to conceal an object from the officer's view;

3. The appearance, behavior or actions of the suspect suggests that he/she is committing a crime;

4. The time of day or night is inappropriate for the suspect's presence in a particular area;

5. The officer observes a vehicle that is similar to that of a broadcast description for a known offense;

6. A person exhibits unusual behavior such as staggering or appearing to be in need of medical attention;

7. The suspect is in a place proximate in time and location to an alleged crime; and,

8. The suspect is carrying an unusual object or his clothing bulges in a manner consistent with carrying a weapon.

V. <u>PROCEDURE</u>

A. Arrest:

All citizens of the United States are guaranteed protection against unlawful arrest.

1. Department members shall uphold these rights by taking a person into custody only when there are reasonable grounds to believe that:

   a) An arrest warrant is confirmed by the issuing jurisdiction for the person being taken into custody; or,

   b) The officer is in compliance with any of the provisions of VA Code §19.2-81, which states generally that:

   "An officer may arrest, without a warrant, any person who commits any crime in the presence of the officer and any person whom he has reasonable grounds or probable cause to suspect of having committed a felony not in his presence."

2. An officer can make an arrest without a warrant of any person at a traffic accident scene or at a hospital or medical facility to which any person involved in such accident has been transported, upon reasonable grounds to believe, based upon personal investigation, including information obtained from eyewitnesses, that a crime has been committed by any person then and there present.

3. An officer may arrest for a misdemeanor, not committed in his/her presence, in the following cases:

   a) Shoplifting;

   b) Carrying a weapon on school property;

    c) Brandishing a firearm;

d) Destruction of property located on business/commercial premises; or,

e) Assault and battery.

4. An officer may arrest without a warrant for:

a) Assault and battery against a family or household member;

b) Violation of a stalking protective order; or,

c) Violation of any provision of a protective order regardless of whether such violation was committed in his/her presence, if such arrest is based on probable cause, upon personal observations, the reasonable complaint of a person who observed the alleged offense or upon personal investigation.

5. Once a person is arrested, he/she shall be taken, forthwith, before a Magistrate where his/her rights shall be explained.

6. Department members shall, at all times, be aware of a prisoner's rights and shall:

a) Expedite all necessary processing so that the prisoner shall not be detained any longer than necessary;

b) Never use force, coercion or other illegal or unethical procedures in seeking admissions of guilt or confessions; and,

c) Recognize and respect the prisoner's right to refuse to give evidence against him/herself. However, there is no encroachment upon a prisoner's rights if he/she voluntarily supplies such information.

d) At all times, Department members shall be aware that special circumstances surround juvenile arrestees. In addition to the above mentioned procedures, the following shall also apply when a juvenile is in a custodial interrogation situation: ***[CALEA 44.2.3]***

e) The juvenile shall be afforded the opportunity to confer with his/her parent(s) or guardian(s) at a time deemed appropriate by the officer or detective; ***[CALEA 44.2.3]***

f) The duration of any interrogation or interview and the number of officers engaging in the interrogation or interview shall be limited based on reasonableness considering the totality of the circumstances surrounding the interrogation or interview;

g) The Department member may need to explain the agency's procedures and the juvenile justice system's procedures to the juvenile(s) being interrogated or interviewed; and, ***[CALEA 44.2.3]***

h) For additional information concerning Juvenile Procedures, refer to General Order 07-18, Juvenile, Truancy and Curfew Procedures.

B. Field Interviews/Stops:

1. Making the field interview or stop (general): [CALEA 1.2.3a]

   a) An officer may conduct field interviews or stops when he/she reasonably believes that some investigative inquiry is warranted. The Supreme Court has ruled that an officer "may in appropriate circumstances and in an appropriate manner approach a person for the purposes of investigating possible criminal behavior even though there is not probable cause to make an arrest."

   b) A field interview requires voluntary cooperation from the citizen. In the absence of probable cause to arrest, the citizen may discontinue the interview at any time and leave. The citizen may also refuse to produce identification or otherwise identify himself.

   NOTE: A distinction is drawn herein between a field interview and a stop.

   c) A stop is a brief detention of a person because of suspected criminal behavior.

   d) An officer must be able to articulate the circumstances that warranted an interview or stop of the citizen. The circumstances may constitute the officer's reasonable suspicion. In court—should a field interview or stop result in an arrest—an officer must justify his intrusion by describing "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Articulable circumstances derive from:

      (1) Firsthand observations;

      (2) Hearsay, as from reliable informants;

      (3) "Collective knowledge" or information shared by several officers; and,

      (4) The totality of facts and circumstances.

2. Field interviews and field interview reports serve as:

   a) A source of information;

   b) A means of identifying the suspect; and,

   c) A means of obtaining suspects and/or witnesses.

3. Place of the interview:

   a) As a general rule, field interviews may be conducted anywhere the officer has a right to be, including:

(1) City of Richmond-owned or controlled property, normally open to members of the public;

(2) Areas intended for public use or normally exposed to public view;

(3) Places to which an officer has been admitted with the consent of the person empowered to give such consent;

(4) Places where circumstances require an immediate law enforcement presence to protect life, well-being or property;

(5) Areas where an officer may be admitted pursuant to a lawful arrest or search warrant; and,

(6) Any other area in which an officer may effect a warrantless arrest.

b) Field contacts shall not be done to coerce a person to leave an area or place where he or she has a legitimate right to be and where no violation of law has occurred.

4. Conduct of field interviews:

a) Officers shall clearly identify themselves and, if not in uniform, display identification.

b) Officers shall be cognizant of the distinction between an interview and a stop and the fact that the distinction depends largely on whether, under the circumstances, the citizen perceives that he or she is free to leave. Officers shall comply with the following guidelines:

(1) Abrupt, short responses that could be misunderstood and requests which could be misinterpreted as commands must be avoided.

(2) The duration of the interview should be as brief as possible.

(3) During the interview, officers should confine their questions to those concerning the suspect's identity, place of residence and other matters necessary to resolve the officer's suspicions.

(4) Miranda warnings are not required during field interviews. The warnings are not required until custodial questioning takes place.

(5) If, during a field interview, a person asks whether he or she must respond or indicates that he or she feels compelled to respond, the officer shall immediately inform him or her of the right to refuse, as well as the right to leave.

5. Recording the Field Interview:

a) To achieve the mission of enhancing the capabilities of ONESolution, officers shall be required to use Mobile Field Reporting (MFR) for data

entry of field contact/interview information. In the event that patrol vehicle, precinct(s) and specialized units access to MFR is unavailable or inaccessible for the officer's usage, the following process must be adhered to:

(1) The officer shall complete a PD-54 (Field Contact Report). Each officer or detective shall deliver his/her PD-54 reports to one of the data entry stations at the end of or during his/her tour of duty.

(2) Data Entry – Each DPR station within each Precinct shall be responsible for data entry into the ONESolution system of all PD-54 reports. In addition to Precinct DPR stations, Major Crimes Division (MCD), Special Investigations Division (SID), and Special Operations Division (SOD) have designated personnel trained to enter the PD-54 forms into ONESolution. Any of these locations can serve as a drop off for any PD-54 report.

(3) Once a PD-54 is properly entered into ONESolution, the hard copy shall be shredded. At this time, if a companion photo has been taken it shall be noted on the remarks section of the PD-54 as to where the photo file is stored.

6. Frisks – see General Order 1-6, Search and Seizure – "Body Searches" for the guidelines on conducting frisks pursuant to Terry v. Ohio (1968).

C. Admissions/Confessions:

1. Notification of Rights: [CALEA 1.2.3b]

a) Any individual in a custodial interrogation, regardless of the severity of the crime, is entitled to the benefit of the procedural safeguards set forth in Miranda vs. Arizona (1966). (Berkemer vs. McCarty, (1984)).

NOTE: The appointment of counsel pursuant to the Fifth Amendment right identified in Miranda is not charge specific. Thus, further police initiated interrogation, on any subject, in the absence of counsel is BARRED once the individual requests counsel. ***[CALEA 1.2.3b]***

b) By reading the admonition stated on the PD-75 (Notification of Rights Form) to the individual, officers comply with the legal requirements covering on-scene arrests and interrogation procedures.

c) If the individual's primary language is one other than English, the interrogating officer(s) may use the AT&T language line to ensure understanding. Officers should also be aware that the Spanish interpretation of the PD-75 form is on the Department's server in the PD forms folder.

d) If the individual is a hearing impaired person, an interpreter shall explain these rights during an interview and/or interrogation prior to the individual's statement as set forth in General Order 6-26, Sign Language

Interpretation for Deaf and Hearing-Impaired Persons. Officers should be aware that the PD-75 is to be used.

2. Constitutional Rights Advisement:

   a) The individual has an absolute right to remain silent, and the admonition must be in clear and unequivocal terms.

      (1) This admonition is to be made because often people are unaware of this privilege, and it assists them in making an intelligent decision as to its exercise.

      (2) The admonition is an absolute prerequisite to overcome "inherent pressures of the interrogation atmosphere."

      (3) The admonition must show the accused that the interrogators are prepared to recognize the privilege.

   b) It must be explained to the individual that anything said can and will be used against the individual in court.

      (1) This is to make the defendant aware of the privilege or the right to remain silent and the consequence of foregoing it.

      (2) In addition, this is to make the accused aware that he/she is not in the presence of persons acting solely in their interest.

   c) The individual must be clearly informed that he/she has a right to consult a lawyer and to have that lawyer with him/her during the interrogation. The accused must be warned not only that he/she has a right to consult with an attorney but also that, if he/she is indigent, a lawyer will be appointed to represent him/her.

   d) If the individual unambiguously indicates that he/she wishes the assistance of counsel before any interrogation occurs, then the police cannot ignore or deny the request on the basis that the individual does not have or cannot afford to retain an attorney.

   e) The United States Supreme Court has stated that if an individual unambiguously indicates in any manner at any time prior to or during questioning that he/she wants an attorney, the interrogation must cease immediately. This does not mean that an attorney must be appointed for an indigent person at that time, but it does mean that the interrogation must stop until an attorney is retained or appointed.

   f) When a person has been arraigned and has had counsel retained or appointed, the arrestee can no longer be questioned by the police without his/her counsel's consent. (Exception: See Maryland v. Shatzer, (2010)) However, if a person has been arrested but not yet arraigned and the person has not clearly and unambiguously invoked his right to counsel, then police may question that individual.

g) A waiver of rights cannot be based on the silence of the accused, but he/she must affirmatively make a voluntary and intelligent waiver. A waiver of these rights shall not be presumed, but the burden rests on the State ***to*** confirm that the accused knew, and intelligently waived, his/her privilege against self-incrimination, and his/her right to retain or be appointed counsel. Officers shall be familiar with the Rights Waiver Card and maintain in their possession a copy of the Rights Waiver Card. [CALEA 1.2.3c]

h) When a person has invoked his/her right to counsel under Miranda; they can be re-interrogated for the specific crime in which Miranda was invoked on when there has been a minimum of a 14-day break in custody, between attempts of interrogation. The break in custody shall satisfy "any residual coercive effects of his/her prior custody", after having given Miranda warnings.

i) The Totality of Circumstances:

(1) Determining whether the individual's statements are made voluntarily is based on the totality of the circumstances.

(2) To be considered voluntary, the individual's statements must be a product of the individual's own free will and not a result of police coercion or the imposition of an overriding will by the police. In other words, if an innocent person would not have confessed or made statements absent police conduct then the confession or statements are not voluntary.

(3) There shall be no threats or cajolery in obtaining the waiver or a confession.

(4) Factors to be considered in the totality of the circumstances are as follows:

(a) Number of police present;

(b) Place of the confession;

(c) Age and mentality of the defendant;

(d) Educational background of the defendant;

(e) Public display of defendant as to radio, television and newspaper releases;

(f) Length of the interrogation; or,

(g) Other matters that might leave the impression that the confession was not voluntary.

D. Freedom of Speech and Assembly:

1. All citizens of the United States are guaranteed the right to seek redress of grievances by:

   a) Freedom of speech;

   b) Peaceful assembly;

   c) Peaceful picketing; and,

   d) Distribution of handbills, (providing such distribution be not in conflict with the provisions of the Richmond City Code Section 18-196).

2. The exercise of these rights must not:

   a) Conflict with the governmental responsibility to keep public streets and public facilities open and available for public use;

   b) Violate any law or ordinance; or,

   c) Include the use of inflammatory remarks related to any instance where a clear and present danger of a riot against any person or group of persons exists.

   NOTE: See also Operational Manual 10-01, Emergency Operations Plan.

E. Every necessary resource of the Department will be employed to rapidly and decisively enforce statutes and ordinances that provide for the protection of the rights and property of all citizens. Within reason, the Department shall ensure that adequate manpower, including supervisory personnel, is available to control and maintain order in every instance where crowds have formed or are expected to form.

VI. FORMS

A. PD-54, Field Contact Report

B. PD-75, Notification of Rights Form (English and Spanish languages)

 

# RICHMOND POLICE DEPARTMENT GENERAL ORDER



| Subject: **BIAS REDUCTION** | | Chapter 1 | Number 4 | # Pages 4 |
|---|---|---|---|---|
| CALEA Standards: 1.2.9a, 1.2.9b, 1.2.9c, 1.2.9d | Related General Order: 1-1, 1-2, 1-16, 7-21 | Effective Date: ***02/13/18***<br>Revised By: ***Annual***<br>Prv. Rev. Date: ***03/26/13*** | | |
| Chief of Police: | | | | |

I. PURPOSE

The purpose of this directive is to provide guidance on reducing the presence of bias in law enforcement actions and to reaffirm the Department's commitment to unbiased law enforcement.

***II. SUMMARY OF CHANGE***

***This revision updates the formatting of the document header, introduces the summary of change paragraph, and amends the accountability statement. The specific changes are noted in bold italicized text throughout the document.***

III. POLICY

The Richmond Police Department is committed to respecting constitutional rights in the performance of employees' duties. The Department's success is based on the respect its employees show to the community and the respect citizens observe toward law enforcement. To this end, Department employees shall exercise duties, responsibilities, and obligations in a manner that does not discriminate on the basis of race, sexual orientation, gender, national origin, ethnicity, age, religion, or economic status. In law enforcement, the failure to control biases can lead to illegal arrests, searches and detentions, thus thwarting the mission of the Department. Most importantly, actions guided by bias destroy the trust and respect essential for success.

In all enforcement decisions, officers shall be able to articulate specific facts, circumstances, and conclusions, which support probable cause or reasonable suspicion for arrests, searches, seizures, and stops of citizens. Officers shall not stop, detain, arrest, search or attempt to search anyone based solely upon the person's race, sexual orientation, gender, national origin, ethnicity, age, religion, or economic status. (See also General Order 1-2, Constitutional Rights.)

IV. ACCOUNTABILITY STATEMENT

All employees are expected to fully comply with the guidelines and timelines set forth in this general order. Responsibility rests with the Division Commander to ensure that any violations of policy are investigated and appropriate training, counseling and/or disciplinary action is initiated.

***This directive is for internal use only, and does not enlarge an employee's civil liability in any way. It should not be construed as the creation of a higher standard of safety or case in an evidentiary sense, with respect to third party claims. Violation of this directive, if proven, can only form the basis of a complaint by this Department, and then only in a non-judicial administrative setting.***

V. DEFINITION

A. BIAS – Prejudice or partiality which may be based on preconceived ideas, a person's upbringing, culture, experience, or education.

B. BIAS-BASED POLICING/PROFILING – The selection of individual(s) based solely on a trait common to a group for any enforcement action. This includes, but is not limited to race, sexual orientation, gender, national origin, ethnicity, age, religion and economic status.

C. PROBABLE CAUSE – According to the U.S. Supreme Court: Probable Cause exists when the facts and circumstances within [the arresting officers'] knowledge and of which the officer had reasonable trustworthy information of, are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed by the suspect.

D. LEGITIMATE PROFILE – A legitimate profile, sanctioned by the Department, is a very specific attribute, or cluster of attributes or characteristics, that form the basis for reasonable suspicion of criminality. A profile is only valid for a limited time and under limited circumstances. These attributes or characteristics are established in writing based on considerable training and experience. A legitimate profile will not be based solely on a person's race, sexual orientation, gender, national origin, ethnicity, age, religion, economic status or any other identifiable group.

E. REASONABLE SUSPICION – Articulable facts which lead an experienced officer to reasonably suspect that a crime has been or is about to be committed. A well-founded suspicion is based on the totality of the circumstances and does not exist unless it can be articulated. Reasonable suspicion supports a stop of a citizen. Courts require that stops based on reasonable suspicion be "objectively reasonable."

VI. PROCEDURE

A. General prohibition:

Officers are strictly prohibited from engaging in bias-based policing/profiling. All complaints of bias-based policing/profiling shall be thoroughly investigated following complaint procedures set forth in General Order 7-21, Internal Investigations, Citizen Complaints and Integrity Tests. [CALEA 1.2.9a]

B. Reporting Violations and Perceived Violations: [CALEA 1.2.9c]

1. Officers shall report any violation or perceived violation of this policy or any comment/concern/complaint received from a member of the public concerning bias-based policing/profiling to his/her supervisor.

2. Supervisors shall report substantiated violations and perceived violations of this policy to the Internal Affairs Division. Supervisors shall report any known comments/concerns/complaints from the public regarding bias-based policing/profiling to the Office of Professional Responsibility for inclusion in its annual review.

3. The OIC of the Office of Professional Responsibility or designee shall investigate or cause to be investigated any complaint of bias-based policing/profiling following procedures set forth in General Order 7-21, Internal Investigations, Citizen Complaints and Integrity Tests. The OIC of the Office of Professional Responsibility or designee shall also identify employees with substantiated bias-based policing/profiling allegations or other substantiated discrimination complaints filed against them and recommend additional remedial training and/or appropriate disciplinary sanctions pursuant to the Department's Code of Conduct, General Order 1-1 and Disciplinary Procedures, General Order 1-16.

C. Disciplinary consequences:

Officers who engage in bias-based policing/profiling shall be subject to disciplinary sanctions pursuant to the Department's Code of Conduct, General Order 1-1 and Disciplinary Procedures, General Order 1-16, up to and including termination/dismissal. Officers may also be subject to remedial and/or additional training.

D. Training: [CALEA 1.2.9a, 1.2.9b]

The Officer-In-Charge of the Training Division or designee shall ensure that training addressing bias-based policing/profiling (including legal aspects) particularly in the context of field contacts, traffic stops/contacts, searches and asset seizure/forfeiture, cultural diversity, courtesy and interpersonal communications skills shall be conducted for sworn employees as a part of their required initial and in-service training. Additional diversity and sensitivity training may be designated for employees with substantiated bias-based policing/profiling or other substantiated discrimination complaints against them or when otherwise deemed necessary.

E. Administrative Review: [CALEA 1.2.9d]

The Officer-In-Charge of the Office of Professional Responsibility or designee shall ensure that an annual review of the Department's practices concerning bias-based policing/profiling is completed no later than February 15th each year and submitted through channels to the Office of General Counsel and to the Chief of Police. At a minimum, this review shall include the following:

1.    An analysis of citizen complaints and comments/concerns that have been received during the year regarding bias-based policing/profiling.

2.    Recommendations, if any, for changes to policies, procedures, practices or training.