IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:21-cr-42 |
| | ) |
| KEITH RODNEY MOORE, | ) |
| | ) |
| Defendant. | ) |

## UNITED STATES' MOTION TO EXCLUDE DEFENSE EXPERT

The United States of America respectfully files this Motion to Exclude Defense Expert Dr. Marvin Chiles. The untimely disclosed expert testimony, apparently about the history of Richmond, is inadmissible under Federal Rule of Evidence 702 because it will not help the Court understand the evidence or determine a fact at issue. *McCleskey v. Kemp,* 481 U.S. 279, 298 n.20 (1987) ("unless historical evidence is reasonably contemporaneous with a challenged decision, it has little probative value."). Further, the defendant's expert notice fails to comply with Federal Rule of Criminal Procedure 16. The defendant's extremely limited disclosure not only fails to demonstrate why the testimony would be helpful, but also significantly prejudices the government's ability to provide a fair response to the evidence. "[T]he case law is clear that it is not an abuse of discretion for a trial court to disallow expert testimony where a late proffer of evidence by the defense substantially prejudices the government in its ability to find its own expert and conduct similar testing." *United States v. Dorsey*, 45 F.3d 809, 816 (4th Cir. 1995); *see also United States v. Holmes*, 670 F.3d 586, 597-98 (4th Cir. 2012). For these reasons, the United States respectfully requests that the Court preclude the defendant's proffered expert witness from testifying at the upcoming hearing. In the alternative, if the Court does permit Dr. Chiles to testify, the Court should schedule his testimony at a later date to reduce prejudice to the United States.

1

I.      **PROCEDURAL BACKGROUND**

Defendant Keith Moore was indicted on May 4, 2021 for possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). In accordance with Fed. R. Crim. P. 12(b)(3)(A)(iv), (C) and the Court's scheduling order (ECF 15), which set the deadlines for motions related to both "selective or vindictive prosecution" and "suppression of evidence," these motions were due on June 21, 2021. The defendant timely filed his motion for suppression of evidence on June 21, 2021. ECF 17. The Court held an evidentiary hearing on the suppression motion on July 26, 2021, after which defense counsel asked the Court "for an opportunity to submit a *supplemental motion to suppress evidence* based on the evidence as was given." Tr. 171:6–9. In the supplemental brief, filed on August 3, 2021, the defendant argued for the first time that the Court should *dismiss* the indictment based on an alleged equal protection violation. ECF 32 at 12.

The Court held a hearing on September 15, 2021 and allowed the defendant to retain a statistical expert regarding his equal protection claims. ECF 43. The defendant's expert report was due on December 31, 2021, *id.*, and the defendant's supplemental brief was filed on March 9, 2022. ECF 66. The United States filed a separate *Daubert* motion on April 8, 2022 and responded to the supplemental brief, ECF 70 and 71, and the defendant responded and replied on April 22 and 23, 2022. ECF 72 and 73. On May 15, 2022, the Court scheduled a hearing for June 27, 2022.

On June 16, 2022, eleven days before the evidentiary hearing, the defendant disclosed another expert. The defendant's new expert is Dr. Marvin Chiles, a history professor that will purportedly testify "about the history of policing in Richmond, and specifically the history of the Richmond Police Department. Dr. Chiles will testify about the political history of Richmond and how that history influenced policing in Richmond. Dr. Chiles will also testify about the history of racial segregation and racial politics in Richmond and how that history has shaped the current racial segregation of residents in Richmond." Defendant's Expert Disclosure, dated June 16, 2022

(attached as Exhibit A). The defendant also disclosed 540 pages of new material pertaining to Dr. Chiles' testimony.

## II. LEGAL AUTHORITY

Federal Rule of Evidence 702, which sets forth the requirements for an expert to testify, allows the introduction of expert testimony if, in relevant part, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702(a); *see also United States v. Crisp*, 324 F.3d 261, 265 (4th Cir. 2003) (outlining the elements of Rule 702 and citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)).

Federal Rule of Criminal Procedure 16(b)(1)(C) requires that parties provide "a written summary of any testimony that the defendant intends to use under Rules 702, 703, and 705," including a description of "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."

## III. ARGUMENT

### A. The Proffered Testimony is of "Little Probative Value"

The defendant is apparently attempting to satisfy his heavy burden of proving discriminatory effect and purpose—or "clear and intentional discrimination" by "clear evidence"[1] —by claiming that Richmond's political history is relevant to a traffic stop based on a fake temporary tag in 2020. For example, among the materials just produced to the United States is a dissertation entitled *Law Enforcement in Richmond: A History of Police-Community Relations, 1737-1974*,[2] Richmond crime statistics from 1985 to 1989, and a show cause response from the

---

[1] *Central Radio Co. v. City of Norfolk, Va.*, 811 F.3d 625, 635 (4th Cir. 2016); *United States v. Mason*, 774 F.3d 824, 830 (4th Cir. 2014).

[2] Louis Bernard Cei, Dissertation, *Law Enforcement in Richmond: A History of Police-Community Relations, 1737-1974*, Florida State University (1975).

City of Richmond concerning an ex parte subpoena the defendant sent on March 14, 2022.[3] The relevance of these materials, particularly the history of Richmond covering nearly 250 years but not the last nearly 50 years, is left unexplained. There is no indication how this history relates to the attempted traffic stop of the defendant in the Fourth Precinct on December 5, 2020. As the Supreme Court has cautioned, "unless historical evidence is reasonably contemporaneous with the challenged decision, it has little probative value. . . . Although the history of racial discrimination in this country is undeniable, we cannot accept official actions taken long ago as evidence of current intent." *McCleskey*, 481 U.S. at 298 n.20.[4] Expert testimony is inadmissible when "there is simply too great an analytical gap between the data and the opinion offered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). There is simply no indication that Dr. Chiles' historical evidence is "reasonably contemporaneous" with the stop on December 5, 2020; indeed, a history professor would hardly be necessary to testify about events that occurred less than two years ago. Thus, there is no reason to permit Dr. Chiles to testify absent a defense demonstration that he has relevant and probative evidence showing discriminatory effect or purpose on behalf of the officers who attempted to stop the defendant on December 5, 2020.

---

[3] The United States was surprised to hear about this subpoena because it is unaware of a finding approving the defendant's discovery pursuits, consistent with Fourth Circuit precedent. "The standard for obtaining discovery in support of a selective prosecution claim is only 'slightly lower' than for proving the claim itself." *United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016) (citing *United States v. Venable*, 666 F.3d 893, 903 (4th Cir. 2012)). "[T]he standard for obtaining discovery is 'correspondingly rigorous' and 'should itself be a significant barrier to the litigation of insubstantial claims.'" *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). Obtaining evidence without the appropriate finding is improper because that finding is itself an important portion of the *Armstrong* test the Fourth Circuit has adopted.

[4] *Watkins v. Angelone*, 133 F.3d 920 (4th Cir. 1998) ("Watkins also proffers historical evidence for the proposition that juries in Danville act with racist intent. Among the facts cited by Watkins was that Danville was the capital of the Confederacy in the waning days of the Civil War, that many black citizens were assaulted in an effort by the Democrat Party to defeat the Readjuster-Republican coalition in the 1883 election, and that civil rights activists suffered at the hands of local officials in the 1960s. This history cannot support a challenge to a 1988 jury: 'unless historical evidence is reasonably contemporaneous with a challenged decision, it has little probative value.' *McCleskey v. Kemp,* 481 U.S. 279, 298 n. 20 (1987).")

### B. The Proffered Testimony is Untimely

The defendant's belated disclosure of Dr. Chiles as an expert occurred just eleven days before the evidentiary hearing on an equal protection argument that was first raised over ten months ago and that was fully briefed nearly two months ago.[5] By delaying the disclosure of Dr. Chiles until the eleventh hour, there is no expert report, no opportunity for the United States to even evaluate whether it needs its own historical expert, no potential for briefing about the impact of his testimony, and limited opportunity to prepare for his testimony by examining the 540 pages of newly produced documents. These 540 pages significantly exceed the page count of the combined briefing and exhibits on the defendant's equal protection argument, and thus more than double the material to be reviewed in advance of next week's evidentiary hearing.

Whatever the reason for defendant's delay, his belated disclosure significantly prejudices the United States for the reasons stated above.

### C. The Defendant's Disclosure Does Not Begin to Comply with Rule 16

The defendant's expert notice only describes in abbreviated fashion the broad outlines of the expert's proposed testimony, which is violative of the spirit and intent of the Federal Rules of Criminal Procedure. Under Rule 16(b)(1)(C), the defendant's written summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."

The failure to comply with Rule 16 is apparent because the disclosure is long on descriptions of the *topics* about which he will testify but no actual opinion is discernible from the summary. Instead of testifying *that* a specific opinion is true, by the defendant's telling Dr. Chiles

---

[5] The defendant indicated in a supplemental filing on March 9, 2022 that he wished to present additional evidence at the evidentiary hearing but did not specify what the new evidence was. ECF 66 at 12. In its filing, the United States noted the defendant's pattern of springing additional evidence and legal claims on the United States past proper deadlines, and requested the Court "prohibit the defendant from providing 'additional evidence' at the eleventh hour, nearly a year after the motion deadline." ECF 71 at 11. Between April 8 and June 16, the United States requested reciprocal discovery from the defendant's counsel on multiple occasions, but nothing was produced until eleven days before the hearing.

will testify "*about* the history of policing in Richmond," "*about* the political history of Richmond," and "*about* the history of racial segregation and racial politics in Richmond." Exhibit A at 1. There are no opinions expressed in the defendant's summary, a clear violation of Rule 16, making it difficult to determine what specific opinions Dr. Chiles holds and will testify to in this case. Additionally, there are no identified "bases or reasons" for his opinions, so the United States has no idea what factual support Dr. Chiles claims for his opinions outside of parsing the provided 540 pages on short notice. The lack of specificity in the defendant's summary makes it very difficult to understand and prepare for Dr. Chiles' prospective testimony.[6]

The United States likely will have many additional objections to Dr. Chiles' testimony, but because of the belated disclosure of his proposed testimony, and the extremely limited disclosure of what he will say, the United States is prejudiced in its ability to test fully the reliability of his testimony.

> D. *In the Alternative, if the Court Allows Dr. Chiles to Testify, His Testimony Should be Delayed*

The United States firmly believes, based on the defendant's arguments thus far and the threadbare expert disclosure, that Dr. Chiles' testimony is of extremely limited evidentiary value, if any. *See, e.g., McCleskey*, 481 U.S. at 298 n.20. Further, this equal protection argument was initially raised in a reply brief has been pending for nearly eleven months, and there is simply no reason that Dr. Chiles' testimony could not have been raised earlier, if at all. Nevertheless, if the Court is inclined to allow the testimony of Dr. Chiles, the United States at the very least requests that Dr. Chiles not be included among the initial witnesses for the upcoming evidentiary hearing and that the Court require the defendant to provide an adequate expert report. Postponing his

---

[6] Should the defendant cure this Rule 16 defect, the United States reserves the right to file a supplemental pleading addressing the admissibility of the witness's testimony at that time.

testimony will reduce the prejudice to the United States, even if it will not address the defendant's unjustified approach of belatedly expanding his arguments and evidence. But at a minimum, the United States should receive a compliant Rule 16 disclosure, an expert report, and enough time to evaluate whether it needs to hire its own historical expert and address the substance of his opinions in writing.

## Conclusion

The Court should exclude the testimony of Dr. Chiles because, in the words of the Supreme Court, historical evidence is likely of "little probative value." There is no indication it is probative of the decision of Fourth Precinct officers to attempt a traffic stop on December 5, 2020, and the defendant's delay in disclosing this testimony is prejudicial to the United States, depriving it of even the opportunity to explore retaining its own historical expert. The disclosure itself also violates the requirements of Rule 16. For these reasons, the Court should exclude the untimely disclosed testimony of Dr. Chiles. Alternatively, the Court should postpone Dr. Chiles' testimony to reduce prejudice to the United States.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:         /s/
Shea Matthew Gibbons
Virginia Bar Number 83916
Erik Siebert
Virginia Bar Number 79057
Assistant United States Attorneys
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: 804-819-5400
Fax: 804-771-2316
Email: Shea.Gibbons@usdoj.gov