IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Number: 3:21CR42 |
| ) | Hon. John A. Gibney |
| KEITH RODNEY MOORE, ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MR. MOORE'S EX PARTE MOTION TO ENFORCE SUBPOENA DUCES TECUM

The Richmond Police Department has not responded to a court-approved subpoena requiring production of documents necessary for Mr. Moore's pending equal protection motion. Mr. Moore therefore requests the assistance of the Court in obtaining the documents under subpoena. The particular resolution of this motion is within the discretion of the Court and can range from an informal request for a response to an order to show cause.

**I.      Facts**

Mr. Moore is facing a charge of unlawful possession of a firearm by a felon. *See* ECF No. 3 (Indictment). The discovery of the firearm arose from a traffic stop the Richmond Police Department initiated at Brookland Park Boulevard and Third Avenue in Richmond. *See* ECF No. 17 (Motion to Suppress) ("MTS"). Mr. Moore moved to suppress the fruits of the stop under the Fourth Amendment; after a hearing, the Court set a schedule for post-hearing briefing regarding Equal Protection issues. *See* ECF No. 31. Mr. Moore filed supplemental briefing and also moved to dismiss the indictment on the grounds of selective enforcement. *See* ECF No. 32. After a further hearing, the Court directed the defense to consult an expert regarding the significance of statistical information presented. *See* ECF No. 44. The parties retained respective experts, and both the

1

motion to dismiss and a government motion to exclude the defense expert witness are pending. *See* ECF Nos. 70-73.

The selective enforcement claim necessarily involves whether law enforcement's actions were motivated, alone or in part, by a "racially discriminatory purpose[.]" *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265 (1977). This expansive inquiry, in turn, involves (as factors the Supreme Court explicitly enumerated) the historical background of racially motivated vehicle stops and the relevant legislative or administrative history. *Id*. at 266-68.

As Mr. Moore argued in his briefing, it appears that the Richmond Police Department's 1977 Neighborhood Precinct Plan divided patrol functions into four precincts; and it drew those lines directly around black neighborhoods. *See* ECF No. 66 at 6. This is, of course, "circumstantial" evidence of discriminatory enforcement intent; but only the historical records surrounding the establishment of the race-based boundaries could provide (stronger) "direct evidence of intent" through "administrative history," which the Supreme Court has characterized as "highly relevant." *Arlington Heights*, 429 U.S. at 266.

Therefore, Mr. Moore sought to obtain this information from the Richmond Police Department. After an unsuccessful[1] attempt in February 2022 to obtain the documents by FOIA request, Mr. Moore requested a subpoena for that same information from the Court. In particular, the motion requested, and the court-approved, a subpoena order to:

---

[1] It's not that the Richmond Police Department refused to answer the FOIA request. Rather, the Richmond Police Department simply never responded to the FOIA request despite repeated inquiries from the Federal Public Defender Office.

2

>Karla Peters
>Project Manager Analyst
>Office of General Counsel
>City of Richmond Police Department
>Office of General Counsel
>200 W. Grace Street
>Richmond, VA 23220

to produce:

1) all proposed maps and planning and implementation documents relating to the designation of the boundaries for the four police precincts within the Richmond Police Department;

2) a copy of the Neighborhood Precinct Plan from 1977; and

3) any amendments or modifications of the Neighborhood Precinct Plan from 1977.

*See* ECF No. 68. As requested in the motion, the subpoena directed production at the clerk's office "on or before Monday, March 28, 2022, at 12:00 noon." *Id.*

An investigator from the Office of the Federal Public Defender personally served the subpoena on March 14, 2022. *See* Ex. A. On April 4, 2022, the defense contacted the clerk's office and determined that no response to the subpoena had been produced. The defense called and left a voicemail for Karla Peters the same day. On April 20, counsel for Mr. Moore discussed the matter with General Counsel for the Richmond Police Department, Victoria Pearson. Ms. Pearson offered to produce data from later time periods, but declined to produce data regarding the creation of the racially segregated precinct boundaries, and indicated that she intended to file a motion to quash the subpoena. No such motion has, to counsel's knowledge, been filed; and the defense has received no further information from Ms. Pearson, Ms. Peters, or the Richmond Police Department.

II.     **The Richmond Police Department is in breach of its obligations under the subpoena.**

The recipient of a properly served subpoena may not simply ignore or decline to obey it. The proper response is either compliance or a motion to quash. Mr. Moore respectfully requests the Court's assistance in obtaining this "highly relevant" information central to his equal protection challenge.

   a.  **The Richmond Police Department must either produce the documents under subpoena or move to quash; it cannot ignore the subpoena.**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor[.]" This guarantee is implemented in specifics by Federal Rule of Criminal Procedure 17, which dictates the form of subpoenas, and Local Criminal Rule 17, which requires court approval for subpoenas duces tecum (for documents). Mr. Moore has complied with the procedural requirements; he requested, obtained (through Court order) the subpoena, and properly served it. The lack of any response, either the data or a motion to quash, places the Richmond Police Department in violation of the Court's order.

The stringency of this principle was demonstrated in *Walker v. City of Birmingham*, 388 U.S. 307 (1967). In *Walker*, civil rights organizers including Dr. Martin Luther King, Jr. and Rev. Fred Shuttleworth, planned peaceful marches and demonstrations in Birmingham, Alabama on Good Friday and Easter Sunday of 1963.[2] City Commissioner Bull Connor obtained an (obviously unconstitutional) injunction prohibiting any marches or demonstrations without prior notice to the

---

[2] Neither the caption nor the opinion mention petitioners by name. For historical background, *see* https://www.scotusblog.com/2013/08/the-good-friday-parade-birmingham-april-12-1963/.

4

march's organizers. *Id*. at 309. The organizers received copies of the injunction Thursday morning, but, undeterred, still marched on Good Friday. *Id*. at 310-311. They were arrested and convicted of contempt for violating the injunction.[3]

When they attempted to defend against contempt by arguing that the injunctions violated the First Amendment, the state courts and then the Supreme Court refused even to hear the merits. This was because the collateral bar rule forbids those who violate court orders from challenging their validity collaterally in contempt proceedings when they had an opportunity and failed to challenge it before violating. "[T]he way to raise that question [of the constitutionality of the injunction] was to apply to the Alabama courts to have the injunction modified or dissolved." *Id*. at 317. It would have been different, the Court held, "if the petitioners, before disobeying the injunction, had challenged it in the Alabama courts[.]" *Id*. at 318. In other words, one cannot "bypass orderly judicial review of the injunction before disobeying it." *Id*. at 320. Here, the Richmond Police Department has neither moved to quash the subpoena, nor complied with it.

### b. Remedies

Legal mechanisms for enforcement of subpoenas are, generally, an order to show cause and the possibility of contempt sanctions. Counsel for Mr. Moore does not advocate for contempt sanctions if less harsh measures will produce the information; but issuance of an order to show cause seems a proper vehicle by which to bring the parties before the Court to resolve the matter civilly. Absent that, he requests that the Court set a hearing on the status of the subpoena, and

---

[3] It was during this period in jail in Birmingham that Dr. King wrote his "Letter from a Birmingham Jail." *Id*.

5

issue a notice of hearing and order to attend to the General Counsel for the Richmond Police Department.

In evaluating which remedy is appropriate, and the amount of time to afford the Richmond Police Department, the following are relevant:

Title 18, Section 401 provides:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
>
> **. . . (3)** Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

In addition to that statute, courts have inherent power under Article III of the Constitution of the United States of America to enforce their orders through contempt proceedings. *See Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 793 (1987) ("[I]t is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders."). The Fourth Circuit confronted and rejected arguments that delays beyond court ordered deadlines excused a subpoena recipient from civil contempt. In *In re Grand Jury Subpoena (T-112)*, 597 F.3d 189 (4th Cir. 2010), corporations were under subpoena to produce documents.

> Instead of immediately beginning production with a goal of completing it by May 4, appellants produced only a handful of materials before asking for an extension. Nor was the extension request supported by evidence that appellants were making all possible efforts to comply but simply did not have enough time to respond. Appellants later did argue the volume of documents was too large, but they could point to no significant efforts to comply in the preceding two days. Arguments that complete compliance was impossible in the time allotted do not excuse failure even to attempt compliance.

*Id.* at 202.

Moreover, Mr. Moore asks that the Court make clear that, with regard to any advice Ms. Peters (the person to whom the subpoena was directed because she is the custodian of the records

at issue) received from Victoria Pearson (General Counsel for Richmond Police Department), the Fourth Circuit has held in an unpublished opinion that even "good faith reliance on counsel's advice not to appear as ordered" does not constitute a defense to contempt liability. *United States v. Meyers*, 302 F. App'x 201, 205 (4th Cir. 2008).

### III. Conclusion

Although the courts in the above cited cases have been fairly harsh with those who fail to obey their orders, Mr. Moore is not requesting, at this point, any sanctions; the matter hopefully can be resolved with a lighter touch. But given the delays and lack of response, he requests the Court's assistance in enforcing its subpoena: either a status hearing with notice to the Richmond Police Department's General Counsel to appear; or an order directly from the Court to produce documents; or an order to show cause and a summons.

Respectfully Submitted,
KEITH RODNEY MOORE

By: /s/
Laura Koenig
Va. Bar No. 86840
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0881
Fax (804) 648-5033
Laura_koenig@fd.org

## CERTIFICATE OF SERVICE

     I hereby certify that on May 20, 2022, I filed the foregoing with the Clerk of Court using the CM/ECF system and served a copy of this pleading on the Richmond Police Department by emailing a copy to Victoria Pearson at Victoria.Pearson@richmondgov.com and also mailing a copy of the pleading to Ms. Pearson at:

Victoria Pearson
Office of General Counsel
City of Richmond Police Department
Office of General Counsel
200 W. Grace Street
Richmond, VA 23220

                              /s/
                            Laura Koenig
                            Va. Bar No. 86840
                            Counsel for Defendant
                            Office of the Federal Public Defender
                            701 E Broad Street, Suite 3600
                            Richmond, VA 23219-1884
                            Ph. (804) 565-0881
                            Fax (804) 648-5033
                            laura_koenig@fd.org

AO89 (Rev. 7/95) Subpoena in a Criminal Case

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA

V.

KEITH R. MOORE

**SUBPOENA IN A CRIMINAL CASE**

Case Number: 3:21CR42

TO: **KARLA PETERS
PROJECT MANAGER ANALYST
CITY OF RICHMOND POLICE DEPARTMENT
OFFICE OF GENERAL COUNSEL
200 W. GRACE STREET
RICHMOND, VA 23220**

*EX PARTE*

X YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case. This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE | COURTROOM |
|---|---|
| UNITED STATES DISTRICT COURT SPOTTSWOOD W. ROBINSON III & ROBERT R. MERHIGE, JR., COURTHOUSE 701 EAST BROAD STREET, 6th Floor RICHMOND, VIRGINIA 23219 | JUDGE JOHN A. GIBNEY, JR. |
| | DATE AND TIME |
| | March 28, 2022, at 12:00 p m. |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

*In lieu of appearing at the hearing of this matter, you may produce the requested documents at the Office of the Clerk, United States District Court, 3rd Floor, Richmond, Virginia 23219, on or before Monday, March 28, 2022 by 12:00 p.m.*

1) all proposed maps and planning and implementation documents relating to the designation of the boundaries for the four police precincts within the Richmond Police Department;

2) a copy of the Neighborhood Precinct Plan from 1977; and

3) any amendments or modifications of the Neighborhood Precinct Plan from 1977.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| **FERNANDO GALINDO** (By) Deputy Clerk [signature] | March 14, 2022 |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
Laura J. Koenig, Assistant Federal Public Defender/Danielle S. McCowan-Lewis, Paralegal
701 East Broad Street, Suite 3600
Richmond, VA 23219-1884
(804) 343-0800

AO89 (Rev. 7/95) Subpoena in a Criminal Case (Reverse)

| PROOF OF SERVICE | | |
|---|---|---|
| RECEIVED BY SERVER | DATE 3/14/2022 | PLACE Office of Federal Public Defender |
| SERVED | DATE 3/14/2022 | PLACE Richmond Police H.Q. 200 W. Grace St., Richmond, VA |
| SERVED ON (PRINT NAME) Karla Peters | | FEES AND MILEAGE TENDERED TO WITNESS ☐ YES ☐ NO  YES NO  AMOUNT $ |
| SERVED BY (PRINT NAME) Lee Hush | | TITLE Investigator - FPD |

DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 3/14/2022
DATE

SIGNATURE OF SERVER
701 E. Broad St., Suite 3600
Richmond, VA 23219
ADDRESS OF SERVER

ADDITIONAL INFORMATION