# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:21-cr-42 |
| | ) |
| KEITH RODNEY MOORE, | ) |
| | ) |
| Defendant. | ) |

### UNITED STATES' REPLY IN SUPPORT OF
### MOTION TO EXCLUDE DEFENSE EXPERT

The United States of America respectfully files this reply in support of its Motion to Exclude Defense Expert Dr. Marvin Chiles. The Court should grant the motion to exclude the defendant's belatedly disclosed expert because even if his testimony were properly and timely disclosed, and adequately explained, it is not relevant and probative because it lacks a sufficient connection to the stop that occurred on December 5, 2020.

**I.   ARGUMENT**

As an initial matter, the defendant's disclosure still does not begin to comply with Rule 16. Under Rule 16(b)(1)(C), the defendant's written summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." The disclosure identifies exceedingly broad topics that Dr. Chiles will address, but identifies no opinions or bases for those opinions. The defendant's response tries to wave away this problem by noting that he is a historian and will testify about a broad swath of topics, he will not actually offer any "ultimate opinions" because he is a historian, and his testimony will be consistent with over 500 pages of dense academic writing. [1] ECF 86 at 6-7. But Rule 16 is not so easily thwarted by vague references

---

[1] The defendant's failure to comply with Rule 16 is not excused because Dr. Chiles is not offering any "ultimate opinions." ECF 86 at 6. This distinction between "ultimate" and non-ultimate opinions is not to be found in Rule 16, and claiming an opinion is not ultimate does not excuse compliance with the Rule.

1

to topics about which an expert may testify, and carefully avoiding stating the specifics of the expert testimony. Expert testimony from a historian does not escape the requirement that the testimony be reliable and helpful simply because the expert disclaims any methodology, declines to identify any methodology, or refuses to identify any particular conclusions about the case at issue in advance of testifying. And the United States is frankly at a loss to understand the relevance of some of the provided documents, including an article about the educational policies of a school principal in the 1980s, and what any of this has to do with police officers' decision on December 5, 2020 to conduct a traffic stop when they saw a vehicle tag they absolutely knew could not match all of the vehicles that had displayed it that night. Given the limited relevance and probative value of this historical evidence, the lack of specificity in the disclosure and referring the United States to over 500 pages of material to identify what Dr. Chiles may testify about is even more unhelpful and violative of Rule 16.

The breathtaking breadth of the defendant's decision to challenge the entirety of the operations of the Richmond Police Department presents unique evidentiary issues. Presumably the defense has challenged RPD policies and executive decisionmaking as a whole because there is simply no evidence, *none*, that the officers were motivated by racism when they attempted to conduct a traffic stop on December 5, 2020 for obviously valid reasons. The defendant is attempting to prove that racism has permeated RPD so thoroughly that since 1977 when some of the police precincts were created that every executive decision about how to allocate limited resources is tainted by racism and thus presumably every case in Richmond that results from a traffic stop should be dismissed. The defendant seeks to erase the requirements that he "must show both 'discriminatory effect and that the officer's action was motivated by a discriminatory purpose.'" *United States v. Mason*, 774 F.3d 824, 829 (4th Cir. 2014) (quoting *United States v.*

2

*Armstrong*, 517 U.S. 456, 465 (1996); *Wayte v. United States*, 470 U.S. 598, 608 (1985)) (brackets omitted).

To attempt to meet this heavy burden, the defendant reaches back decades, but the Supreme Court has warned courts that this sort of historical evidence, essentially that alleged racism once is racism forever, is of extremely limited evidentiary value. *McCleskey v. Kemp,* 481 U.S. 279, 298 n.20 (1987). The Supreme Court requires a connection to the stop being challenged, *id.* at 292, and that is severely lacking here. The defendant's argument appears to be that because of decisions made in 1977, RPD has engaged in actions that led to overpolicing of areas with a disproportionate minority population, and there are thus racial disparities in policing outcomes. Because there is little to no connection to the present-day, no evidence of overpolicing, no evidence that police deployment patterns are not warranted by factors such as crime rate or calls for service, no consideration of other reasons for any racial disparity, and absolutely no demonstration that but for the alleged overpolicing of certain areas this traffic stop would not have occurred, the defendant's attempt falls far short of meeting the defendant's burden of demonstrating "clear and intentional discrimination." *Central Radio Co. v. City of Norfolk, Va.*, 811 F.3d 625, 635 (4th Cir. 2016) (party asserting equal protection violation "must show not only that similarly situated individuals were treated differently, but that there was 'clear and intentional discrimination.'") (citing *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 825 (4th Cir. 1995); *Washington v. Davis*, 426 U.S. 229, 239 (1976)). It is simply not enough to show some vague and unexplained racial disparity. *McCleskey*, 481 U.S. at 292 ("to prevail under the Equal Protection Clause, [the defendant] must prove that the decisionmakers in *his* case acted with discriminatory purpose"). To qualify as "invidious or in bad faith" the government must "select[] or reaffirm[] a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an

3

identifiable group." *Wayte,* 470 U.S. at 610. The defendant's abject failure to meet his burden of proof cannot be remedied by a belated[2] and irrelevant addition of evidence.

The defendant repeatedly urges the Court to allow the belated testimony of Dr. Chiles because his testimony is only caused by RPD's inability to produce documents about the history of its precincts, but there are several problems with the defendant's argument. First, there has been no demonstration that the "Neighborhood Precinct Plan" first established in 1977 created precinct boundaries that are still in existence today. Second, the demographics of Richmond have shifted considerably in the last 45 years, so even if it were true that the precinct boundaries currently align with rough clusters of racial groups, there is no demonstration that it was so when the precinct boundaries were created. *See, e.g.*, Dina Weinstein, Richmond Magazine, *Counting Change: The 2020 U.S. Census Reveals Richmond's Growing, Changing Population* (Feb. 7, 2022), richmondmagazine.com/news/features/counting-change/. Further, the defendant's unrelenting focus on Richmond residents again ignores what should be a focus on the *drivers* within Richmond who are subject to being stopped by RPD. *See, e.g.*, ECF 71 at 8. That RPD cannot produce the granular documents the defendant seeks from 45 years ago is not an excuse to allow irrelevant and unhelpful evidence completely lacking any link to the relevant issue before the Court.

The defendant also seeks to excuse the obtaining of discovery without meeting the required evidentiary standards to do so. "The standard for obtaining discovery in support of a selective prosecution claim is only 'slightly lower' than for proving the claim itself."[3] *United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016). The defendant seeks to sidestep this requirement to obtain

---

[2] While the defendant goes to great efforts in his response to claim he acted as diligently as possible, and is not to blame for the late disclosure, the simple fact is that he disclosed a new expert nearly 10 months after his motion to dismiss was shoehorned into a motion to suppress and mere days before a hearing.

[3] The standard for a selective enforcement claim is identical. *United States v. Mason*, 774 F.3d 824, 829 (4th Cir. 2014).

4

discovery by creating out of whole cloth a new category of documents—so-called "public documents"—that are allegedly not covered by the rigorous *Armstrong* test to obtain discovery.[4] This new distinction does not come from the Fourth Circuit or Supreme Court. The standard for obtaining "discovery" on an *Armstrong* claim is intentionally rigorous, *id.*; *Armstrong,* 517 U.S. at 464, 468, and the defendant's end run around the *Armstrong* requirements is further evidence of the complete lack of support for his claim. The Supreme Court's evidentiary threshold of first showing "'some evidence' making a 'credible showing' of both discriminatory effect and discriminatory intent" before obtaining additional discovery is not unconstitutional, as the defendant claims. *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (citing *Armstrong,* 517 U.S. at 469-70).

## Conclusion

The Court should exclude the testimony of Dr. Chiles because, in the words of the Supreme Court, historical evidence unconnected to the facts at issue is of "little probative value." There is no indication it is probative of the decision of Fourth Precinct officers to attempt a traffic stop on December 5, 2020, and the disclosure still does not begin to comply with Rule 16. The Court should exclude the untimely disclosed testimony of Dr. Chiles.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
Shea Matthew Gibbons
Virginia Bar Number 83916
Erik Siebert
Virginia Bar Number 79057

---

[4] There is no issue with using means accessible to the public, such as FOIA requests or downloading from the public website the Community Policing Act data, to obtain these so-called public documents. But when court processes are used to obtain discovery without the requisite showing, *Armstrong*'s requirements are circumvented. The protracted history of the defendant's equal protection claim demonstrates the wisdom of a preliminary credible showing.

Assistant United States Attorneys
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: 804-819-5400
Fax: 804-771-2316
Email: Shea.Gibbons@usdoj.gov