IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:21cr42 |
| | ) |
| KEITH RODNEY MOORE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Reply of the United States to its**
**<u>Motion to Reconsider</u>**

Whether they live in Oak Grove, Gilpin Court, or Windsor Farms, Richmond residents want and deserve to live without fear of violence. When crime occurs, residents necessarily demand that the Richmond Police Department ("RPD") solve it and prevent future incidents. *See, e.g.*, "Residents react to six people shot near Richmond club, demand more police support in communities," WRIC-ABC (July 4, 2022); "Richmond Police didn't respond to 911 call. Then gunshots rang out: 'This could've been prevented,'" WTVR-CBS (Mar. 29, 2023); "His home was shot into. Now, he wants Richmond Police to address its critical staffing shortage," WRIC-ABC (Apr. 5, 2023). In response, RPD sensibly deploys its limited resources to calls for service and patrolling high crime areas, including through traffic stops, where they can have the greatest impact. *See* ECF No. 33 at 24; ECF No. 70 at 16; ECF No. 70, Ex. A at 3. If it doesn't, citizens understandably complain that the police are not solving or preventing crime.

That is exactly what occurred on the evening of December 5, 2020, when Mr. Moore failed to stop for a lawful traffic stop, engaged police in a high-speed pursuit through a residential neighborhood, wrecked his vehicle, fled on foot, and as seen below, RPD recovered a firearm from his vehicle. ECF No. 33 at 14-19, 102.

1



*Id.* at 19 (Gov't Ex. 6).

RPD does not, as Mr. Moore contends, "discriminately stop Black drivers in order to fight violent crime." Resp. at 7. The Court already found that the individual RPD officers here acted in good faith, without regard to Mr. Moore's race, when they stopped him for a legitimate traffic offense and then he fled with an illegal gun. Mem. Op. at 21. As for the wider Department, the only RPD policies in the record expressly prohibit racism:

> All citizens of this country, under the Constitution, are guaranteed certain basic rights. It is the policy of the Richmond Police Department to safeguard these rights without bias. . . .

RPD, Gen. Order on Constitutional Rights at 1 (eff. Feb. 11, 2019) (ECF No. 70-2).

> Department employees shall exercise duties, responsibilities, and obligations in a manner that does not discriminate on the basis of race. . . . Officers are strictly prohibited from engaging in bias-based policing/profiling. All complaints of bias-based policing/profiling shall be thoroughly investigated. . . .

RPD, Gen. Order on Bias Reduction at 1, 2 (eff. Feb. 13, 2018) (ECF No. 70-2). There is absolutely no evidence in the record that RPD had any policy – explicit or implicit – directing officers to stop Black drivers.

The only evidence that Mr. Moore and the Court rely upon to show RPD's traffic stops were motivated by discriminatory intent is the rate of Black drivers relative to white Drivers who were pulled over from July 1 to December 6, 2020 in Richmond. The Court heard evidence from Dr. Michael Smith, a national expert on racial disparities in policing with 25 years of experience, that "a disparity in the number of stops does not justify a conclusion that there is biased policing." ECF No. 101 at 50, 225. In his response, Mr. Moore continues to discount this conclusion because Dr. Smith "admitted that he would never find racial bias played a causal role in a pattern of policing no matter what the statistical data showed." Resp. at 4.

But this reflects a fundamental lack of understanding of statistical analysis. Dr. Smith testified that finding a causal role first requires "knowledge of who is driving and available to be stopped." ECF No. 101 at 250. This is called a benchmark. Dr. Smith testified that census data – which the defendant's expert relied on solely – is widely regarded as scientifically invalid for comparing police traffic data. ECF No. 101 at 193-200. There are other possible benchmarks, like field observation, veil of darkness, or even traffic crash data. *Id.* at 190-92. In plain terms, absent a baseline point of comparison, Dr. Smith could not find that racial bias (or any other factor) played a causal role.[1] While the Court found that some researchers nonetheless have used

---

[1] As the Court noted, the defendant's own expert agreed that they *could not* prove a causal connection between race and the RPD traffic stops:

> THE COURT: . . . The question was, are you aware that DCJS said you can't reach any conclusions about causation from the data that they have?
>
> DR. COSTON: I am not making conclusions about causation.
>
> THE COURT: Okay. Well, isn't one of the things we have to prove in this case is that race caused this disparity?
>
> DR. COSTON: I am trying drawing conclusions about the large scale patterns and relationships between race and the other variables that were examined, but I can't -- I am not characterizing those as a causal relationship.

census data as a benchmark, Mem. Op. 10-11, the fact that Dr. Smith disagrees with that methodology does not render his entire opinion incredible.

Although the statistics during these six months in 2020 reflected that a high percentage of Richmond drivers who were stopped were Black, this data does not establish that RPD was motivated by discriminatory intent and violated the Equal Protection Clause when it stopped Mr. Moore for an admittedly legitimate traffic offense. It does mean that citizens, police, public officials, and scholars should delve into these statistics, as the DCJS Report recommends. *See* ECF No. 72-1 at 67-72.[2] The Court said it best during the second day of expert testimony:

> . . .
>
> THE COURT: Mr. Gibbons, do you agree that the burden is on the defendant to prove that race caused this disparity?
>
> GOV'T: Your Honor, emphatically.
>
> THE COURT: Do you agree that the witness just admitted that doesn't show that?
>
> GOV'T: Yes, Your Honor.
>
> THE COURT: And why are you continuing to ask questions?
>
> GOV'T: I could rest, Your Honor.

ECF No. 100 at 134-36.

---

[2] *See also* Virginia Dep't of Criminal Justice Servs. Report at 68 (quoting academic research) ("Our inability to devise a universally acceptable method for measuring racial and ethnic proportions within an ever-changing driving population remains one of the most controversial methodological challenges in racial profiling research. . . . Racial profiling studies based on poorly constructed benchmarks cause political and public relations problems and sometimes result in ill-fated legislation. (Withrow and Williams, 2015, p.1). Most of the analyses reported show that police traffic stops are not proportional to the racial distribution of that jurisdiction's resident population, but most studies do not conclude that the police are engaged in racial profiling. (McMahon et. al., 2002, p. 1)").

GOV'T: The other problem is if you have individual rogue officers that are making the problem, go after them. This will help identify and narrow down if there are certain parts of an area. . . But to say that the Richmond Police force is designed, or their enforcement system to selectively enforce African-Americans I think is a step too far. That is all we have heard throughout today.

THE COURT: You know, ultimately this may be a political question.

ECF No. 101 at 299.

The Court has cast a spotlight on these issues for the Commonwealth. The United States respectfully requests that the Court reconsider the scope and outcome of its decision in this case. The United States also respectfully requests that the Court resolve this motion expeditiously to facilitate possible further review in the Fourth Circuit given the public interest in the prompt resolution of this criminal case.

Respectfully submitted,

By: */s/ Jessica D. Aber*
Jessica D. Aber
United States Attorney
Virginia Bar No. 72680
United States Attorney's Office
919 E. Main Street, Suite 1900
Richmond, Va. 23219
Phone: 804-819-5400
Email: jessica.d.aber@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2024, I filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ Jessica D. Aber
Jessica D. Aber
United States Attorney