IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal Action No. 3:21cr42

KEITH RODNEY MOORE,
         Defendant.

**MEMORANDUM ORDER**

The Court dismissed this case because the evidence showed that the City of Richmond's Police Department ("RPD") officers disproportionately pull over Black drivers. The government now asks the Court to reconsider its conclusion. (*See* ECF No. 128.)

The motion to reconsider fails for several reasons. First, it does little more than reargue points the Court has already considered. Second, it asks the Court to reevaluate the testimony of the government's expert, whom the Court found unpersuasive. Third, it is based on a factual contention that lacks evidentiary support: that stopping Black drivers somehow drives down serious crime in the City. The Court, therefore, will deny the government's motion.

*A. The Government Does Not Meet the Legal Standard for a Motion to Reconsider*

"It is within the sole discretion of the Court as to whether the granting of a motion to reconsider is appropriate." *United States v. Dickerson*, 971 F. Supp. 1023, 1024 (E.D. Va. 1997). "A motion to reconsider cannot appropriately be granted where the moving party simply seeks to have the Court 'rethink what the Court ha[s] already thought through—rightly or wrongly.'" *Id.* (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inf.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). Because no provision in the Federal Rules of Criminal Procedure governs motions for reconsideration, district courts are "guided by the standard set in the Civil Rules." *Id.*; *see* Fed. R. Civ. P. 59(e). The government must therefore provide at least one of the

following three grounds for reconsideration: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available [at the time of the Court's ruling]; or (3) to correct a clear error of law." *Dickerson*, 971 F. Supp. at 1024 (quoting *Hutchison v. Staton*, 994 F.2d 1075, 1081 (4th Cir. 1993)).

The government's motion does not purport to "accommodate an intervening change in controlling law," and it does not introduce new evidence. *See id.* It instead disagrees with the Court's "analytical" findings on Keith Rodney Moore's selective enforcement claim. (ECF No. 128, at 2.)[1] Its three arguments in this regard fail.

First, the government points out that no one in RPD said in writing that RPD officers should discriminate against Black drivers. Of course, at this point in our nation's history, no one in their right mind would write down such a suggestion. But the evidence in the record shows conclusively that, at the relevant time, Black drivers got the lion's share of stops; Black drivers made up 77 percent of the stops and were over 5 times more likely to be stopped than white drivers. That RPD did not have a written directive to disproportionately stop Black drivers does not mean that it did not have a practice of doing exactly that. An "invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *See Washington v. Davis*, 426 U.S. 229, 242 (1976). Here, Moore relied on statistical, historical, and circumstantial evidence to show selective enforcement. So the first ground for reconsideration fails.

Second, the government asks the Court to reexamine its view of the government's proffered expert witness, whom the Court did not find credible or persuasive. The Court

---

[1] This sort of argument is precisely why courts generally forbid motions that simply ask the judge to "rethink" what has been decided. Nowhere is this procedural error more apparent than in the government's argument about "benchmarks," raised solely in its reply memorandum. This argument was thoroughly addressed in the Court's Opinion dismissing the case, and will not be addressed here.

observed the expert's demeanor on the witness stand, and considered the substance of his testimony. It found that he did not come to the case with an open mind. The government's expert essentially testified that no amount of evidence could persuade him that the police dealt unfairly with Black motorists. He criticized Moore's expert for using a statistical method that he himself had used. And he could not suggest any legitimate reason for the disproportionate effect of traffic stops on Richmond's Black drivers. The Court rejected his testimony and sees no reason to reconsider its finding.

Third, the government suggests that RPD officers stop a lot of Black motorists because they are executing some sort of grand strategy to stop crime in parts of Richmond with a high Black population. This argument fails for three reasons. First, the government presented no evidence that such a strategy exists. Second, the government presented no evidence that stopping drivers cuts down the number of crimes committed. Third, the existence of this undisclosed strategy does not begin to explain another undisputed fact in the record: RPD officers disproportionately stop Black drivers in predominately white sections of the City, as well as in predominately Black communities. This cannot be part of the City's supposed anticrime strategy.

The Court notes that the Virginia Department of Criminal Justice Services has released new information suggesting a gradual decrease in the percentage of traffic stops of Black drivers. *See* Luca Powell, *Police Pulling Over Fewer Black Drivers*, Richmond Times-Dispatch, March 11, 2024, at A1–A2. This new information takes the air out of the argument that the police use traffic stops to quell crime in the City. In any event, the evidence in this case revealed that, in the six months leading up to Moore's arrest, Black drivers were over five times as likely to be stopped in Richmond than white motorists. And the government never supplemented the

record with evidence that reveals a decreasing disparity between white and Black drivers stopped by RPD officers. So, the third ground for reconsideration fails.

### *B. The Government's List of Frightening Effects of the Court's Decision*

Additionally, the government threatens horrible consequences of the Court's decision.[2] It suggests that RPD may become discouraged and stop fighting crime, and may even redirect its efforts away from protecting Black citizens. Again, the Court will note that no government witness testified that RPD has some strategy to prevent violent crime by targeting Black drivers throughout Richmond. And, more importantly, the Court has a responsibility to protect the constitutional rights of Moore and other Black drivers. If the City has a grand scheme to stop crime by stopping Black motorists, the scheme cannot exist at the expense of human freedom.

The government argues, correctly, that Black citizens deserve a City with less crime. Much to the credit of the Police Department, they are receiving that. But they also deserve a City where they can go to church, school, and the grocery store without fear of the police picking on them. The time has come for this practice to end.

The Court DENIES the government's motion. (ECF No. 128.)

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

Date: <u>11 March 2024</u>
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[2] The government does not suggest this as a ground to change the Court's prior Opinion, but rather to remind the Court that its decisions have a real effect on life in the City.